**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 16-cv-02011-WJM-KLM
Consolidated with Civil Action No. 16-cv-3180-WJM-KLM

SEAN GUBRICKY, Derivatively on Behalf of Nominal Defendant, CHIPOTLE MEXICAN GRILL, INC.,

      Plaintiff,

v.

STEVE ELLS,
MONTGOMERY F. (MONTY) MORAN,
MARK CRUMPACKER,
JOHN S. CHARLESWORTH,
KIMBAL MUSK,
PATRICK J. FLYNN,
STEPHEN GILLETT,
ALBERT S. BALDOCCHI,
DARLENE J. FRIEDMAN, and
NEIL W. FLANZRAICH,

      Defendants,

-and-

CHIPOTLE MEXICAN GRILL, INC., a Delaware Corporation,

      Nominal Defendant.

---

**LEAD PLAINTIFF'S <u>UNOPPOSED</u> MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT**

---

      Pursuant to Federal Rule of Civil Procedure 23.1, Lead Plaintiff Sean Gubricky ("Lead Plaintiff" or "Gubricky") respectfully submits this <u>Unopposed</u> Motion for Preliminary Approval of Settlement.[1]  The grounds for this Motion are set forth below.

---

[1] All capitalized terms not separately defined herein have the same meaning as set forth in the Stipulation and Agreement of Settlement and Release ("Stipulation") filed herewith as Exhibit 1.

## I.    <u>INTRODUCTION</u>

This is a stockholder derivative action (the "Pending Action") brought by Gubricky on behalf of nominal defendant Chipotle Mexican Grill, Inc. ("Chipotle" or the "Company") and against defendants Steve Ells, Montgomery F. Moran, Mark Crumpacker, John S. Charlesworth, Kimbal Musk, Patrick K. Flynn, Stephen Gillett, Albert S. Baldocchi, Darlene J. Friedman, and Neil W. Flanzraich (collectively, the "Individual Defendants" and, together with Chipotle, "Defendants").  Gubricky alleges the Individual Defendants, who are current and former officers and directors of Chipotle, violated state law and breached their fiduciary duties in connection with failures to manage the risk of food-borne illness at the Company's thousands of restaurants and to properly oversee the Company's response to a series of food-borne illness outbreaks at the Company's restaurants beginning in the summer of 2015.  Chipotle and the Defendants have adamantly denied these allegations throughout the litigation and do not admit any fault, wrongdoing, nonfeasance or misfeasance as a part of resolving this matter.

On June 7, 2017, the Court granted Defendants' motion to dismiss Gubricky's complaint after "reluctantly conclud[ing] that Gubricky has failed to plead demand futility" under Delaware law (*see* ECF No. 91 at 24–25).  However, the Court made its order without prejudice, so as to afford Gubricky time to consider making a demand on Chipotle's board of directors (the "Board").

During the time allotted by the Court for Gubricky to consider making a demand, the parties—who had engaged in active settlement negotiations for months prior to the Court's decision—reached an agreement in principle to settle the Pending Action (the "Proposed Settlement"), and executed the Stipulation on September 29, 2017.  The Proposed Settlement is the result of extensive arm's-length negotiations and will, if approved, provide significant benefits for Chipotle and its stockholders, including by requiring Chipotle to enact further internal controls and corporate governance policies designed to enhance oversight by the Board and Chipotle

management of food-safety issues and preventing future food-borne illness outbreaks such as those giving rise to this Action.

Accordingly, Lead Plaintiff now seeks entry of the attached [Proposed] Scheduling Order, which:  (1) grants preliminary approval of the Settlement; (2) approves the form and manner of giving Chipotle stockholders notice of the Settlement; (3) schedules a hearing (the "Settlement Hearing") at which the Court will consider granting final approval of the Settlement; and (4) preliminarily enjoins the Releasing Parties from prosecuting any of the Released Claims.  *See* Stipulation, Exhibit 1.

Co-Lead Counsel for Lead Plaintiff have conferred with counsel for Defendants, and Defendants support entry of the Scheduling Order.[2]

## II.    BACKGROUND OF THE LITIGATION AND SETTLEMENT

### A.    Procedural History

Gubricky commenced the Pending Action by filing an 84-page Verified Shareholder Derivative Complaint and Jury Demand on August 8, 2016 (ECF No. 20) (the "Complaint"). Gubricky's Complaint was based largely on the contents of confidential Chipotle documents that Gubricky secured through a books and records demand on the Company pursuant to Section 220 of the Delaware General Corporation Law (8 *Del. C.* § 220).

---

[2] There are also three related state court cases that have been consolidated and are part of the Settlement and whose counsel have also executed the Stipulation. They are: (i) *Skorski v. Ellis, et al.,* Case No. 2016CV31215 (Colo. Dist. Ct. Denver Cnty.); (ii) *Arnold v. Ellis, et al.,* Case No. 16CV31335 (Colo. Dist. Ct. Denver Cnty.); and (iii) *Weintraub v. Ellis, et al.,* Case No. 2016CV33217 (Colo. Dist. Ct. Denver Cnty.). All three cases have been consolidated into *In re Chipotle Mexican Grill, Inc. Derivative Litigation* (the "State Court Action"). The State Court Action is part of this settlement and "[w]ithin five business days of entry of the Judgment, the Parties shall file a stipulation, in the form attached to the Stipulation as Exhibit F, dismissing the State Court Action with prejudice."

On November 1, 2016, Defendants responded to Gubricky's Complaint by filing a Motion to Dismiss (ECF No. 52). Gubricky filed his opposition to that Motion on December 22, 2016 (ECF No. 61), and Defendants filed their reply on January 19, 2017 (ECF No. 77). The briefing on Defendants' Motion to Dismiss was extensive, with the Court granting the parties leave to file excess pages for all three briefs (ECF Nos. 48, 56, 76).

On December 27, 2016, while Gubricky and Defendants were engaged in briefing the Motion to Dismiss, another Chipotle stockholder, Cyrus Lashkari ("Lashkari"), commenced a second derivative action on behalf of Chipotle, advancing allegations that substantially overlapped with the allegations advanced by Gubricky (*see Lashkari v. Ells, et al.*, C.A. No. 1:16-cv-3180-RM-MJW, ECF No. 1). Lashkari's complaint, like Gubricky's, was based largely on confidential Chipotle documents secured through a books and records demand.

Gubricky and Lashkari conferred and agreed to seek consolidation of their two actions in the interests of judicial economy and the efficient resolution of the claims which are the gravamen of both plaintiffs' complaints. Gubricky and Lashkari also agreed to a structure for prosecution of the consolidated action whereby Gubricky would serve as Lead Plaintiff, the parties' respective lead counsel—Faruqi and Faruqi LLP ("Faruqi") for Gubricky and Labaton Sucharow LLP ("Labaton") for Lashkari—would serve as Co-Lead Counsel, and their mutual Colorado counsel, Berens Law LLC ("Berens"), would serve as Liaison Counsel. Gubricky and Lashkari further agreed that Gubricky's action should become the lead case and that Gubricky's Complaint would remain the operative complaint. Thus, Defendants' Motion to Dismiss would not need to be re-briefed and there would be no corresponding delay. Accordingly, Gubricky and Lashkari moved for consolidation on January 24, 2016 (ECF No. 81). The Court granted their motion, instituting the proposed leadership structure on May 24, 2017 (ECF No. 89).

On June 7, 2017, the Court granted Defendants' Motion to Dismiss for failure to plead demand futility adequately under Delaware's "sky-high pleading burdens," but issued its order without prejudice, so as to afford Gubricky time to consider making a demand on Chipotle's board of directors (ECF No. 91).

**B.      The Proposed Settlement**

At the time the Court granted Defendants' Motion to Dismiss, Court-appointed Co-Lead Counsel and counsel for Defendants had been engaged for months in arm's-length negotiations concerning the terms of a potential settlement.  After the Court issued its Order, the parties were able to reach a final agreement to settle the Action.

The full terms of the parties' Proposed Settlement are attached as Exhibit 1 (Stipulation) and Exhibit A (and the Addendums attached thereto) to the Stipulation.  In general, the Proposed Settlement provides that, in consideration for Lead Plaintiff's agreement to release all claims against the Individual Defendants and Chipotle that relate to Lead Plaintiff's allegations and were, or could have been, asserted in the Pending Action, Chipotle will enact and maintain further internal controls and corporate governance reforms designed to enhance proper oversight by the Board and senior management of food-safety issues in the future and to prevent further alleged food-borne illness outbreaks such as those giving rise to Gubricky's and Lashkari's respective complaints.

The major reforms mandated by the Proposed Settlement include, *inter alia*, a requirement that Chipotle establish (which was accomplished in November 2016), and maintain for at least two years after final approval of the Proposed Settlement, a Food Safety Advisory Council, which shall meet at least quarterly and be comprised of a minimum of three independent consulting experts in food safety dedicated to investigating, evaluating, and making recommendations regarding food safety to the Company's Executive Director of Food Safety, who shall participate in all Council

meetings and serve as the liaison between the Company and the Council (Stipulation, Ex. A, Addendum B Charter for Food Safety Advisory Council, Part II.A.)  The Council will be charged with continually reviewing Chipotle's food safety procedures and strategies, validating existing initiatives, and advising on opportunities for improvement (*id.* at Part III.A). The Council's recommendations will be reported to the Company at least quarterly and more often as needed. Further, the Executive Director of Food Safety shall report the Council's activities to the Board on a quarterly basis, ensuring that the Board will remain apprised of the Council's views and recommendations (*id.* at Part II.D).

The Proposed Settlement also includes a requirement that Chipotle amend its whistleblower program, as necessary, to ensure, *inter alia*, that:  (i) the Company's General Counsel shall be responsible for reporting to the Audit Committee details of any significant food-borne illness related complaints and shall provide a detailed report concerning his or her investigation of such complaints no later than the next Audit Committee meeting (Stipulation, Exhibit A at ¶9.a.); (ii) a log of such significant food-borne illness complaints, as well as the results of all investigations of such complaints, shall be memorialized in writing and maintained by the CFO and General Counsel for a period approved by the Audit Committee (*id.* at ¶9.b.); and (iii) Chipotle will continue to allow its independent auditor access to the log and investigation results upon request (*id.*).

Further, the Proposed Settlement includes a commitment from the Company ensuring that not less than three of Chipotle's Board members at the time of the events giving rise to the Complaint will no longer be directors by May 2018[3] (Stipulation, Exhibit A, at ¶1).  Additional

---

[3] Montgomery Moran's departure from the Board, Chipotle's four new Board appointees as of December 2016, and the four Board members who will not be running for reelection to the Board in 2017 shall be credited towards Chipotle's compliance with this provision.

provisions of the Proposed Settlement include amendments to Chipotle's insider trading and related persons transaction policies (*id.* at ¶¶11-16). Finally, the Proposed Settlement establishes an Audit Committee Charter and Food Safety Council Charter (Stipulation, Exhibit A, Addendum A; Addendum B.).

Additionally, the Stipulation provides that Co-Lead Counsel intend to seek an award of up to $375,000 in fees and expenses in connection with the Action. Defendants have agreed not to oppose a fee and expense award in that amount.

Co-Lead Counsel believe the terms and conditions of the Proposed Settlement are fair, reasonable, and adequate to Chipotle and its stockholders. Co-Lead Counsel reached this conclusion, and agreed to the Proposed Settlement, after weighing the substantial benefits the Company will receive as a result of the reforms mandated by the Proposed Settlement against the significant risk that further prosecution of Lead Plaintiff's claims would fail to secure any relief, let alone relief as valuable as the reforms mandated by the Proposed Settlement.

## III. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

### A. Settlements Are Generally Favored

Courts strongly favor settlement as a method for resolving disputes. *See Amoco Prod. Co. v. Fed. Power. Comm'n*, 465 F.2d 1350, 1354 (10th Cir. 1972). This is particularly true with respect to derivative litigation, "because such litigation is notoriously difficult and unpredictable." *Make a Difference Found., Inc. v. Hopkins*, No. 10-cv-00408-WJM-MJW, 2012 U.S. Dist. LEXIS 36251, at * 7-8 (D. Colo. Mar. 19, 2012) (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983)). Therefore, courts strongly favor settlement in these circumstances. *See Mohammed v. Ells*, No. 12-cv-1831-WJM-MEH, 2014 U.S. Dist. LEXIS 118796, at *11 (D. Colo. Aug. 26, 2014) (quoting *Maher*, 714 F.2d at 455).

### B.    Standards for Preliminary Approval

Federal Rule of Civil Procedure 23.1(c) provides that "[a] derivative action may be settled, voluntarily dismissed, or compromised only with the court's approval."   Rule 23.1(c) further requires that "[n]otice of a proposed settlement . . . must be given to shareholders or members in the manner that the Court orders."   As a result, approval of a settlement in a derivative action generally involves a two-step process.   First, the Court considers and, if appropriate, grants preliminary approval of the settlement, which triggers notice of the proposed settlement to the company's stockholders.   Second, the Court holds a fairness hearing and, following that hearing, determines whether to grant final approval of the settlement.

"The purpose of preliminary approval is to determine whether the proposed settlement is within the range of possible approval, *i.e.*, whether there is any reason not to notify the class members of the proposed settlement and proceed with a fairness hearing." *Freebird, Inc. v. Merit Energy Co.*, No. 10-1154-KHV, 2012 U.S. Dist. LEXIS 173075, at *11 (D. Kan. Dec. 6, 2012). As such, the Court's review is "less stringent than that applied to final approval." *Id.* at *12. Courts will ordinarily grant preliminary approval of a derivative action where it is determined: (a) "that there has been no fraud or collusion in arriving at the settlement agreement"; and (b) "that [the proposed settlement] is fair, reasonable, and adequate." *Ryskamp v. Looney*, No. 10-cv-00842-WJM-KLM, 2012 U.S. Dist. LEXIS 114190, at *8 (D. Colo. Aug. 14, 2012) (quoting *Maher*, 714 F.2d at 455).   In assessing whether a proposed settlement is fair, reasonable, and adequate, courts consider the following factors:

1.   Whether the proposed settlement was fairly and honestly negotiated;

2.   Whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt;

3.   Whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and

4.   The judgment of the parties that the settlement is fair and reasonable.

*Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1188 (10th Cir. 2002).

As demonstrated below, application of the relevant factors strongly supports preliminary approval of the Proposed Settlement.

### C.   The Proposed Settlement Was Fairly and Honestly Negotiated and Is Not the Product of Collusion or Fraud

The settlement negotiations in this case were fair, honest, and at arm's-length.  The lack of collusion or fraud is evident in the manner in which this case was litigated.  Far from colluding, the parties to this litigation and their counsel "vigorously advocated their respective positions throughout the pendency of the case." *See Wilkerson.*, 171 F.R.D. at 284.  Indeed, this dispute was hard fought even before the case was filed, with both Gubricky and Lashkari conducting extensive books and records investigations pursuant to 8 *Del. C.* § 220, securing and reviewing a voluminous set of confidential Company materials in order to strengthen their allegations before filing complaints.  Then, after the action was commenced, the parties vigorously contested Defendants' motion to dismiss, filing thorough and carefully-crafted briefs—all three of which required leave of Court due to excess length (ECF Nos. 48, 56, 76).

Further, both Lead Plaintiff and Defendants are represented by experienced counsel well-versed in class and derivative litigation and with significant track records of honest and fair dealing.  Indeed, Court-appointed Co-Lead Counsel for Lead Plaintiff—Faruqi and Labaton—are two separate law firms who initially came to this litigation independently, representing different stockholder plaintiffs who initiated books and records investigations of Chipotle unbeknownst to one another.  The lack of fraud or collusion is evidenced by the fact that *both* Faruqi and Labaton— as well as Lead Plaintiff's highly experienced Colorado counsel, Berens— all with their own independent judgment and reputation to maintain, agree that the Proposed Settlement is fair and

reasonable.

The fairness of the settlement and lack of collusion is evidenced by the fact that both Lead Plaintiff and Lashkari engaged in significant pre-filing preparation—in the form of reviewing Chipotle's production of thousands of pages of nonpublic Company documents in response to their respective books and records demands—to inform their understanding of the case prior to agreeing to the Proposed Settlement. *See Lucas*, 234 F.R.D. at 693 ("Because the settlement resulted from arm's length negotiations between experienced counsel after significant discovery had occurred, the Court may presume the settlement to be fair, adequate, and reasonable.").

Thus, this factor supports preliminary approval of the Proposed Settlement.

**D.     The Ultimate Outcome of the Litigation Was Unquestionably In Doubt**

Even had the Court not granted Defendants' motion to dismiss, Lead Plaintiff faced substantial obstacles to securing a recovery.  Courts have recognized that derivative litigation is "notoriously difficult and unpredictable." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir. 1992).  Even within the world of derivative litigation, moreover, Lead Plaintiff's primary theory of liability—failures of oversight by certain Chipotle directors and officers—has been recognized by Delaware courts as "possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Stone ex rel. AmSouth Bancorp. v. Ritter*, 911 A.2d 362, 372 (Del. 2006) (quoting *In re Caremark Int'l Inc. Deriv. Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996)).

After the Court's decision granting Defendants' Motion to Dismiss, a successful outcome of Lead Plaintiff's claims became anything but certain.  This Court has recognized that the mere pendency of motions to dismiss, let alone their success, creates uncertainty as to the outcome of a case.  *See Ryskamp*, 2012 U.S. Dist. LEXIS 114190, at *9 ("Indeed, with various Motions to

Dismiss still pending at the time of the settlement, the Plaintiff's prospects for success in this action were certainly in question").

### E. The Proposed Settlement Confers a Substantial Benefit on Chipotle and Easily Outweighs the Mere Possibility of Future Relief

The benefits secured for Chipotle and its stockholders as a result of this Action will be substantial if the Proposed Settlement is approved, easily outweighing the remote possibility of future relief. Lead Plaintiff brought the Pending Action to remedy alleged failures by the Board and Chipotle senior executives to oversee adequately the Company's food safety practices. If the Proposed Settlement is approved, Lead Plaintiff will have secured Chipotle's agreement to a set of corporate enhancements that will ensure the Board's and management's enhanced oversight of food safety issues in the future.

Particularly valuable is the Company's agreement to maintain a Food Safety Council mandated to review continually Chipotle's food safety procedures and strategies and, crucially, the Company's agreement to mandate that the Executive Director of Food Safety report the Council's activities and findings to the Board and Company management on a quarterly basis. The Proposed Settlement further ensures, *inter alia*, that any significant foodborne illness complaint shall be reviewed by the General Counsel whose findings will be reported to the Audit Committee. Accordingly, the Proposed Settlement mandates valuable reforms of Chipotle's food safety practices from both the top down (in the form of the Food Council providing a high level review of the Company's practices) and the bottom up (ensuring food safety related concerns by ground-level employees are reviewed at the highest levels of the Company).

Courts have observed that corporate governance reforms such as these are very often the most important relief that can be secured in a stockholder derivative action. For example, the Fifth Circuit has explained:

> [W]here, as here, the derivative suit is largely an attack on past
> corporate management practices, as well as on some present officers
> and directors, the dollar amount of a possible judgment, which is
> essentially the sole goal in [a] class action damage suit, is not the
> sole, and may well not be the most important, matter to be
> considered, for the effects of the suit on the functioning of the
> corporation may have a substantially greater economic impact on it,
> both long- and short-term, than the dollar amount of any likely
> judgment in its favor in the particular action.

*Maher*, 714 F.2d at 461.  *See also Mohammed v. Ells*, No. 12-cv-1831-WJM-MEH, 2014 U.S. Dist. LEXIS 118796, at *11 (D. Colo. Aug. 26, 2014) ("The fact that the settlement involves only corporate governance reforms (in addition to payment of attorneys' fees) does not weigh against approval of the settlement.  To the contrary, the corporate governance reforms provided for as part of the settlement are specifically and appropriately designed to prevent the recurrence of the alleged misconduct that formed the basis for this action.");  *Ryskamp*, 2012 U.S. Dist. LEXIS 114190, at *10 ("The fact that the settlement involves some corporate governance reforms also weighs in favor of approval of the settlement.").

The benefit conferred by the Proposed Settlement's mandated reforms is substantial and, indeed, those reforms are specifically targeted to prevent the type of alleged misconduct Lead Plaintiff sought to remedy and prevent by commencing the Pending Action.  *See Sved v. Chadwick*, 783 F. Supp. 2d 851, 864 (N.D. Tex. 2009) (approving derivative litigation settlement because it "offers tangible, long-term remedial measures that are specifically designed to avoid the alleged missteps in [the company's] past and protect shareholders as the company moves forward"); *Make a Difference Found., Inc. v. Hopkins*, No. 10-cv-00408-WJM-MJW, 2012 U.S. Dist. LEXIS 36251, at *8 (D. Colo. Mar. 19, 2012) (same).  The benefit conferred plainly outweighs the possibility that future relief would be more favorable for Chipotle and its stockholders.  Accordingly, this factor strongly supports preliminary approval.

### F.      The Amount of Attorneys' Fees and Expenses Is Fair and Reasonable

The total attorneys' fees and expenses contemplated by the Proposed Settlement—$375,000—are relatively modest and in fact are a discount to Co-Lead Counsel's lodestar. Courts have frequently awarded far more in derivative settlements providing for corporate governance reforms.  *See, e.g.*, *In re Davita Healthcare Partners, Inc. Deriv. Litig.*, 2015 U.S. Dist. LEXIS 74372, at *16 (D. Colo. 2015) (finding fee of greater than $6 million "constitute[ed] fair compensation to Plaintiff's counsel" who secured settlement mandating corporate governance reforms); *Unite Nat. Ret. Fund v. Watts*, 2005 U.S. Dist. LEXIS 26246, at *17-18 (D.N.J. 2005) (approving $9.2 million in fees and expenses to Plaintiff's counsel who secured settlement mandating corporate governance reforms).  Attorneys' fees and expenses were not discussed until negotiations were completed on all substantive terms of the Proposed Settlement.

### G.      The Parties Believe the Settlement Is Fair, Adequate, and Reasonable

It is well-established that significant weight should be attributed to the belief of experienced counsel that the settlement is in the best interest of the parties.  *See Alvarado Partners, L.P. v. Mehta*, 723 F. Supp. 540, 548 (D. Colo. 1989) (opinion of experienced counsel is entitled to considerable weight); *In re New Mexico Nat. Gas Antitrust Litig.*, 607 F. Supp. 1491, 1506 (D. Colo. 1984) (placing "great weight" on recommendation by counsel that the proposed settlement should be approved by the court as fair and reasonable).

Here, all of the parties are represented by counsel with extensive experience in derivative litigation.  Indeed, Plaintiff is represented by three separate firms with extensive experience in derivative litigation.  All three have determined, based on their experience, the record developed through Gubricky and Lashkari's Section 220 investigations, and the procedural posture of this case, that the Proposed Settlement is in the best interests of Chipotle and its stockholders.  As a result, this factor strongly supports preliminary approval.

-13-

Given that each of the relevant factors militates in favor of preliminary approval, Lead Plaintiff respectfully requests that the Court preliminarily approve the Proposed Settlement.

## IV.  THE STIPULATION PROVIDES FOR ADEQUATE NOTICE TO CHIPOTLE'S STOCKHOLDERS

Pursuant to Federal Rule of Civil Procedure 23.1(c), "[n]otice of a proposed settlement, voluntary dismissal, or compromise must be given to shareholders or members in the manner that the court orders."  To satisfy procedural due process, the Company's stockholders must be given notice and opportunity for a hearing.  *Jones v. Nuclear Pharmacy, Inc.*, 741 F.2d 322, 325 (10th Cir. 1984).  "Both the right to be heard from and the right to be told why are integral elements of this notion of due process."  *Id.*

In accordance with these precepts, Lead Plaintiff respectfully requests that the Court approve the form and content of the Notice of Proposed Settlement of Derivative Action, Final Settlement Hearing, and Right to Appear ("Notice") (Stipulation, Ex. C), as well as the method of dissemination to stockholders.

The Stipulation contemplates that Chipotle will send the Notice by first-class mail to all stockholders of record as of the close of business on the date of the Scheduling Order at the addresses provided on the books of the Company.  If requested by any stockholder of record who holds shares on behalf of one or more beneficial holders, the Company will provide the stockholder of record with sufficient copies of the Notice for the stockholder of record to send to the beneficial holders on whose behalf the shareholder of record holds shares.  Chipotle will also post on the Company's corporate website a statement or heading identifying the Proposed Settlement, along with a hyperlink that brings users directly to a webpage containing the content of the Notice, no later than forty-five business days prior to the final Settlement hearing.

The Notice contains a statement why the Notice was issued; a summary of the litigation; a description of the Proposed Settlement; a statement on attorneys' fees and expenses; an explanation of the reasons for the Proposed Settlement; notice of the Settlement Hearing, right to attend, and how to object; and instructions for obtaining additional information.

The Notices and the proposed methods for disseminating them meet the requirements of Rule 23.1 and due process, and are the best notices and procedures practicable under the circumstances.   The proposed methods for dissemination are, moreover, the same as those previously approved by the Court in a derivative matter involving Chipotle, *Mohammed v. Ells*, No. 12-cv-1831-WJM-MEH (ECF No. 83) (D. Colo. April 18, 2014).

## CONCLUSION

For the reasons stated above, Lead Plaintiff respectfully requests that the Court enter the Preliminary Approval Order.

DATED:  September 29, 2017

*/s/  Jeffrey A. Berens*
Jeffrey A. Berens
BERENS LAW LLC
2373 Central Park Boulevard, Suite 100
Denver, CO  80238
Tel:  (303) 861-1764
Fax: (303) 395-0393
jeff@jberenslaw.com

FARUQI & FARUQI, LLP
Stuart J. Guber
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Telephone: 215-277-5770
Facsimile: 215-277-5771
sguber@faruqilaw.com

FARUQI & FARUQI, LLP
Nadeem Faruqi
Nina M. Varindani
685 Third Avenue, 26th Floor
New York, New York 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
nfaruqi@faruqilaw.com
nvarindani@faruqilaw.com

LABATON SUCHAROW LLP
Ned Weinberger
Thomas Curry
300 Delaware Avenue, Suite 1340
Wilmington, Delaware 19801
Telephone: 302-573-2530
Facsimile: 302-573-2529
nweinberger@labaton.com
tcurry@labaton.com

*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 29, 2017, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notification of such filing to the e-mail

addresses denoted on the Court's Electronic Mail Notice List.

*/s/ Jeffrey A. Berens*
Jeffrey A. Berens
BERENS LAW LLC
2373 Central Park Boulevard, Suite 100
Denver, CO  80238-2300
(303) 861-1764 (Telephone)
(303) 395-0393 (Facsimile)
jeff@jberenslaw.com