**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-02011-WJM-KLM
      Consolidated with Civil Action No. 16-cv-3180-WJM-KLM

SEAN GUBRICKY, Derivatively on Behalf of Nominal Defendant, CHIPOTLE MEXICAN GRILL, INC.,
      Plaintiff,
v.
STEVE ELLS,
MONTGOMERY F. (MONTY) MORAN,
MARK CRUMPACKER,
JOHN CHARLESWORTH,
KIMBAL MUSK,
PATRICK J. FLYNN,
STEPHEN GILLETT,
ALBERT S. BALDOCCHI,
DARLENE FRIEDMAN, and
NEIL FLANZRAICH.
      Defendants,
-and-
CHIPOTLE MEXICAN GRILL, INC., a Delaware Corporation,
      Nominal Defendant.

---

**STIPULATION AND AGREEMENT OF SETTLEMENT AND RELEASE**

---

      This Stipulation and Agreement of Settlement and Release ("Agreement" or "Stipulation") is entered into effective as of the date set forth below by and among: (1) Zachary Arata, Mark Arnold, Sean Gubricky, Cyrus Lashkari, Uri Skorski, and Ross Weintraub (collectively "Plaintiffs") by and through Court-appointed Co-Lead Counsel for Plaintiffs, and derivatively on behalf of Nominal Defendant Chipotle Mexican Grill, Inc. ("Chipotle" or the "Company"), and (2) defendants M. Steven Ells, Montgomery F. Moran, John R. Hartung, Mark Crumpacker, Kimbal Musk, Albert S. Baldocchi, John S. Charlesworth, Stephen Gillett, Neil W. Flanzraich,

Patrick J. Flynn, and Darlene J. Friedman (collectively "Defendants," and collectively with Plaintiffs and Chipotle, the "Parties" and each a "Party").

## RECITALS

WHEREAS, on April 6, 2016, Plaintiff Uri Skorski filed a lawsuit in the District Court, County of Denver, Colorado (the "State Court") styled *Skorski v. Ells*, et al., Case No. 2016CV31215 (Colo. Dist. Ct. Denver Cty.) asserting claims derivatively on behalf of Chipotle (the "*Skorski* Action");

WHEREAS, on April 14, 2016, Plaintiffs Mark Arnold and Zachary Arata filed a lawsuit in State Court styled *Arnold, et al. v. Ells, et al.*, Case No. 16CV31335 (Colo. Dist. Ct. Denver Cty.), asserting claims derivatively on behalf of Chipotle (the "*Arnold* Action");

WHEREAS, on May 20, 2016, pursuant to a consent motion by the Skorski and Arnold plaintiffs, the Court ordered the consolidation of the *Skorski* Action and the *Arnold* Action into the matter styled *In re Chipotle Mexican Grill, Inc. Derivative Litigation* (the "State Court Action");

WHEREAS, on September 1, 2016, Plaintiff Ross Weintraub filed a lawsuit in State Court styled *Weintraub v. Ells, et al.*, Case No. 2016CV33217 (Colo. Dist. Ct. Denver Cty.) (the "*Weintraub* Action");

WHEREAS, on March 27, 2017, pursuant to a consent motion by the Weintraub plaintiff, the *Weintraub* Action was consolidated into the State Court Action, and the State Court Action together with the *Gubricky* Action (defined below) and *Lashkari* Action (defined below) are hereinafter referred to as the "Actions";

WHEREAS, on August 8, 2016, Plaintiff Sean Gubricky filed a lawsuit in the United States District Court for the District of Colorado styled *Gubricky v. Ells, et al.*, Case No. 1:16-cv-02011-

WJM-KLM (D. Col.), asserting claims derivatively on behalf of Chipotle (the "*Gubricky* Action" or the "Pending Action") (the operative complaint in the Pending Action being the "Complaint");

WHEREAS, on December 27, 2016, Plaintiff Cyrus Lashkari filed a lawsuit in the United States District Court for the District of Colorado styled *Lashkari v. Ells, et al.*, Case No. 1:16-cv-03180-RM-MJW (D. Col.) asserting claims derivatively on behalf of Chipotle (the "*Lashkari* Action").

WHEREAS, the Actions collectively allege that Chipotle suffered injury as a result of Plaintiffs' allegations set forth more specifically in each individual lawsuit (the "Allegations");

WHEREAS, the claims asserted in the Actions are collectively referred to herein as the "Claim";

WHEREAS, Defendants and Nominal Defendant Chipotle moved to dismiss the complaint in the Pending Action on November 1, 2016 (the "Motion to Dismiss");

WHEREAS, on May 24, 2017, the Court entered an Order: (i) consolidating the *Lashkari* Action with the *Gubricky* Action, and (ii) designating Faruqi & Faruqi, LLP and Labaton Sucharow as Co-lead Counsel and Berens Law LLC as Liaison Counsel in the Pending Action;

WHEREAS, on June 7, 2017, the Court granted the Motion to Dismiss the Pending Action (the "Dismissal Order"), stating a deadline of July 7, 2017, and then extending such deadline to September 29, 2017, for Plaintiff Gubricky to indicate that he has either made a demand on Chipotle's board of directors or that he has no intent to make such a demand;

WHEREAS, prior to the Court's entry of the Dismissal Order, the Parties began arms-length negotiations concerning a possible settlement of the Actions and continued to engage in extensive arms-length negotiations thereafter  concerning a possible settlement of the Actions;

WHEREAS, Plaintiffs believe that a settlement at this juncture on the terms and on the conditions set forth herein (the "Settlement") is fair, reasonable, and adequate, considering the benefits conferred upon Chipotle by the Settlement, the anticipated significant expense of continued litigation (including to Chipotle), and the risks of continued litigation;

WHEREAS, Plaintiffs believe that the corporate governance reforms set forth in Section 1 below and Exhibit A hereto will prevent or deter potential future conduct similar to that alleged in the Complaint;

WHEREAS, Plaintiffs in the *Gubricky* Action, *Lashkari* Action and *Weintraub* Action, prior to the filing of their respective complaints all  engaged in document collection and review pursuant to statutory books and records demands under Delaware law and along with the remaining plaintiffs in the *Skorski* Action and *Arnold* Action utilized such documents to confirm that the terms of the Settlement are fair, reasonable, and adequate to the Company's shareholders;

WHEREAS, Defendants, while denying wrongdoing, believe that a settlement at this juncture on the terms and conditions set forth herein is desirable, considering the anticipated significant expense and the risks of continued litigation;

WHEREAS, entry into the Agreement is not an admission to the truth or lack thereof of Plaintiffs' allegations or the merit of any of the claims asserted in the Actions; and

WHEREAS, the independent members of the Chipotle board of directors exercised their business judgment and have unanimously approved the Settlement and each of its terms, including the attorneys' fees and expense provision, and believe that a settlement at this juncture on the terms and conditions set forth herein is desirable and is in the best interests of Chipotle.

NOW, THEREFORE, in consideration of the foregoing matters and other consideration, the Parties have entered into and agreed to this Agreement this 29th day of September, 2017 ("the Settlement Date"), consisting of the following agreed terms and conditions:

## 1.    CORPORATE GOVERNANCE REFORMS

1.1    In consideration of the dismissal of the Actions with prejudice, the releases between the Parties, and other terms contained in this Agreement, the Company will institute certain corporate governance reforms with respect to its food safety procedures, which are identified as items numbered 1 through 16 under the heading "Corporate Reforms and Commitments" on Exhibit A hereto (the "Corporate Governance Reforms").  The Company agrees to implement the Corporate Governance Reforms within no less than sixty (60) days of the Effective Date (as defined in Section 8 below).  Within ten (10) days thereafter, the Company, though its undersigned counsel, shall confirm in writing that Chipotle has implemented the Corporate Governance Reforms.

1.2    Defendants, without admitting wrongdoing, acknowledge that the filing, prosecution, and settlement of the Actions were a major factor influencing the Company's agreement to undertake implementation of the Corporate Governance Reforms and that the Corporate Governance Reforms confer a substantial benefit on the Company.

## 2.    RELEASES

In consideration of the releases, promises, and covenants herein and other good and valuable consideration, the sufficiency and receipt of which the Parties hereby acknowledge, the Parties agree as follows:

2.1    <u>Plaintiffs' Releases.</u>   Upon the Effective Date, Plaintiffs and each and every other

Chipotle shareholder, for themselves and derivatively on behalf of Chipotle, and for their heirs,

successors, representatives, assigns, and beneficiaries, and for any person or entity that could assert

any of the Defendants' Released Claims (defined herein) on their behalf (collectively "Plaintiff

Releasing Parties"), release and forever discharge each of the Defendants, Chipotle, its direct and

indirect subsidiaries, and all of their past and present officers, directors, shareholders, members,

partners, managers, employees, agents, attorneys, insurers and their heirs, successors,

predecessors, and assigns (collectively, "Defendant Released Parties") from, and hereby covenant

not to sue Defendant Released Parties for, any and all manner of claims, demands, rights, actions,

potential actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits,

agreements, costs, expenses, debts, interest, penalties, sanctions, fees, attorneys' fees, judgments,

decrees, matters, issues, and controversies of any kind, nature or description whatsoever, whether

known or unknown, contingent or absolute, suspected or unsuspected, foreseen or unforeseen,

disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, fixed or contingent,

accrued or unaccrued, apparent or unapparent, including Unknown Claims (defined herein), that

are, have been, could have been, could now be or in the future can or might be asserted in the

Actions, or in any court, tribunal or proceeding (including, but not limited to, any shareholder

derivative claims for, based upon or arising out of any actual or alleged breach of fiduciary or other

duty, negligence, fraud or misrepresentation, or any other claims based upon or arising under any

federal, state, local, foreign, statutory, regulatory, common or other law or rule, which shall be

deemed to include but is not limited to any federal or state securities, antitrust, or consumer

protection laws, whether or not within the exclusive jurisdiction of the federal courts), by or on

behalf of Plaintiffs or derivatively by any of the Plaintiff Releasing Parties, whether legal, equitable, or any other type, against any of the Defendant Released Parties, which have arisen, could have arisen, now arise, hereafter may arise out of, are based upon, relate in any manner to, or involve, directly or indirectly, any of the acts, events, facts, matters, transactions, occurrences, conduct, statements, representations, misrepresentations, omissions, allegations, practices, or claims, or any other matters, things or causes whatsoever, or any series thereof, that were, could or might have been, or in the future could or might be alleged, asserted, set forth, claimed, embraced, involved or referred to in, directly or indirectly, the Actions or that otherwise relate to Plaintiffs' claims or any of Plaintiffs' allegations (including, but not limited to, any and all claims that are based upon, arise out of, relate in any way to, or involve, directly or indirectly, (i) any actions, deliberations, decisions or negotiations or failure to act, deliberate, decide or negotiate in connection with Plaintiffs' claims or Plaintiffs' allegations, including but not limited to the process of deliberation by the Company and any of its officers, directors, or advisors, (ii) the fiduciary obligations of the Defendant Released Parties in connection with any claims related to Plaintiffs' claims or Plaintiffs' allegations, or (iii) Chipotle's food safety practices and any incidents of foodborne illness) (collectively "Defendants' Released Claims") provided, however, that Defendants' Released Claims shall not include the right of Plaintiff Releasing Parties to enforce the terms of the Agreement or the Settlement, including Plaintiffs' Counsel's application for an award of fees and expenses, as contemplated herein[1];

---

[1] The term "Released Claims" as used herein shall collectively refer to Defendants' Released Claims, Chipotle's Released Claims, and Plaintiffs' Released Claims. Released Claims shall not include the claims asserted in the actions styled *Ong v. Chipotle Mexican Grill, Inc.,* 16-Civ.-141, currently pending in the United States District Court for the Southern District of New York and

2.2     <u>Chipotle's Releases as to the Defendant Released Parties.</u>   Upon the Effective Date, Chipotle, on behalf of itself and its shareholders and its successors and assigns (collectively "Chipotle Releasing Parties"), releases and forever discharges each of the Defendant Released Parties from, and hereby covenants not to sue Defendant Released Parties for, any and all manner of claims, demands, rights, actions, potential actions, causes of action, liabilities, damages, losses, obligations, judgments, duties, suits, agreements, costs, expenses, debts, interest, penalties, sanctions, fees, attorneys' fees, judgments, decrees, matters, issues, and controversies of any kind, nature or description whatsoever, whether known or unknown, contingent or absolute, suspected or unsuspected, foreseen or unforeseen, disclosed or undisclosed, liquidated or unliquidated, matured or unmatured, fixed or contingent, accrued or unaccrued, apparent or unapparent, including Unknown Claims (defined herein), that are, have been, could have been, could now be, or in the future can or might be asserted in the Actions, or in any court, tribunal or proceeding (including, but not limited to, any shareholder derivative claims for, based upon or arising out of any actual or alleged breach of fiduciary or other duty, negligence, fraud or misrepresentation, or any other claims based upon or arising under any federal, state, local, foreign, statutory, regulatory, common, or other law or rule, which shall be deemed to include but is not limited to any federal or state securities, antitrust, or consumer protection laws, whether or not within the exclusive jurisdiction of the federal courts), by or on behalf of Plaintiffs or derivatively by any of the Plaintiff Releasing Parties, whether legal, equitable, or any other type, against any of the Defendant Released Parties, which have arisen, could have arisen, now arise, hereafter may arise out of, are

---

*Kelley v. Chipotle Mexican Grill, Inc.,* CA No. 1:17-cv-01760-STV, currently pending in the United States District Court for the District of Colorado.

8

based upon, relate in any manner to, or involve, directly or indirectly, any of the acts, events, facts, matters, transactions, occurrences, conduct, statements, representations, misrepresentations, omissions, allegations, practices, or claims, or any other matters, things or causes whatsoever, or any series thereof, that were, could or might have been, or in the future could or might be alleged, asserted, set forth, claimed, embraced, involved, or referred to in, directly or indirectly, the Actions or that otherwise relate to Plaintiffs' claims or any of Plaintiffs' allegations (including, but not limited to, any and all claims that are based upon, arise out of, relate in any way to, or involve, directly or indirectly, (i) any actions, deliberations, decisions or negotiations or failure to act, deliberate, decide, or negotiate in connection with Plaintiffs' claims or Plaintiffs' allegations, including but not limited to the process of deliberation by the Company and any of its officers, directors, or advisors, and/or (ii) the fiduciary obligations of the Defendant Released Parties in connection with any claims related to Plaintiffs' claims or Plaintiffs' allegations) (collectively "Chipotle's Released Claims") provided, however, that Chipotle's Released Claims shall not include the right of the Chipotle Releasing Parties to enforce the terms of the Agreement or the Settlement;

2.3     Releases as to Plaintiffs and Plaintiffs' Counsel.  Upon the Effective Date, each of the Defendant Released Parties and Chipotle shall be deemed to have, and by operation of the Final Order and Judgment (the "Judgment," attached hereto as Exhibit E) shall have, fully, finally, and forever released, relinquished, and discharged Plaintiffs and Plaintiffs' Counsel from all claims, arising out of, relating to, or in connection with their institution, prosecution, assertion, settlement, or resolution of the Actions, Plaintiffs' claims, and Plaintiffs' allegations (collectively "Plaintiffs'

Released Claims") provided, however, that Plaintiffs' Released Claims shall not include the right of the Defendants to enforce the terms of the Agreement or the Settlement[2];

2.4    The Parties and each of them further covenant and agree that they will not take any action, nor assert any claim, complaint, debt, damage, lien, cause of action, warranty, suit, liability, obligation, or demand, whether in law or in equity, contract or tort, judicially or administratively, against any other Party, or any of their shareholders, owners, members, managers, directors, officers, agents, partners, employees, successors, assigns, parents, subsidiaries, affiliates, or representatives, arising from, or in any way relating to, any act or omission that occurred before the final approval of this Agreement by the Court and that relates to, arises out of, or concerns the Claim, the Released Claims, Unknown Claims, or Plaintiffs' Allegations.

## 3.    PROCEDURE FOR APPROVAL

As soon as practicable after execution of this Agreement, the Parties shall submit this Agreement together with its exhibits to the Court and shall jointly apply for the entry of an order substantially in the form attached hereto as Exhibit B (the "Scheduling Order").  Subject to the Court's approval:

3.1.    The Scheduling Order shall schedule a settlement hearing (the "Settlement Hearing") at which the Court will (i) determine whether the Pending Action may proceed as a shareholder derivative action pursuant to Federal Rule of Civil Procedure 23.1 ("Rule 23.1"), solely for purposes of the Settlement and without prejudice to the Company's right to raise defenses under Rule 23.1 or any other defenses in the Actions in the event that the Court fails to grant final

---

[2]  The term "Releasing Person" as used herein shall collectively refer to Defendants' Released Parties, Chipotle Releasing Parties, and Plaintiff Releasing Parties.

approval of the Settlement, (ii) determine whether the Settlement, on the terms and conditions provided for in the Agreement is fair, reasonable, and adequate and in the best interests of the Company and its shareholders, (iii) determine whether the Court should finally approve the Settlement and enter a Judgment, substantially in the form attached hereto as Exhibit E, dismissing the Pending Action with prejudice and extinguishing and releasing the claims as set forth herein, (iv) hear and determine any objections to the Settlement, (v) rule on Plaintiffs' application for an award of attorneys' fees and expenses, (vi) rule on Plaintiffs' application for a service award; and (vii) rule on such other matters as the Court may deem appropriate.

3.2.    The Scheduling Order shall direct that the Notice (defined herein), substantially in the form attached hereto as Exhibit C, be mailed by the Company by first-class mail to all shareholders of record as of the close of business on the date of the Scheduling Order at the addresses provided on the books of the Company and posted on the Company's corporate website no later than forty-five (45) business days prior to the Settlement Hearing.  If requested by any shareholder of record who holds shares on behalf of one or more beneficial holders, the Company promptly shall provide the shareholder of record with sufficient copies of the Notice for the shareholder of record to send to the beneficial holders on whose behalf the shareholder of record holds shares.   The Scheduling Order shall further direct that the Summary Notice, substantially in the form attached hereto as Exhibit D, shall be caused by Chipotle to be issued by the newswire service PR Newswire once to the public in the United States no later than forty-five (45) business days before the Settlement Hearing. All costs incurred in identifying and notifying Company shareholders of the Settlement shall be paid by the Company, and in no event shall Plaintiffs or Plaintiffs' Counsel be responsible for any notice costs or expenses.  Prior to the

Settlement Hearing, Defendants or their counsel shall file with the Court an appropriate declaration with respect to the preparation and dissemination of the Notice and Summary Notice.

3.3.     The Scheduling Order shall approve the form and content of the Notice and Summary Notice and find that the giving of notice in the manner set forth in Section 9.1 meets the requirements of Rule 23.1 and due process, and is the best notice practicable under the circumstances.

**4.     JUDGMENT**

At the Settlement Hearing, the Parties shall jointly request that the Judgment be entered substantially in the form attached hereto as Exhibit E.  Subject to the Court's approval:

4.1.     The Judgment shall find that each of the requirements of Rule 23.1 has been satisfied and that the Pending Action has been properly maintained according to the provisions of Rule 23.1.

4.2.     The Judgment shall approve the Settlement, adjudging the Agreement to be fair, reasonable, adequate, and in the best interests of the Company and its shareholders, and directing the consummation of the Settlement in accordance with the terms and conditions of this Agreement.

4.3.     The Judgment shall order dismissal of the Pending Action on the merits with prejudice (subject only to compliance by the Parties with the terms of this Agreement and any Order of the Court concerning this Agreement) and shall fully, completely, and forever discharge, settle, release, and extinguish the Released Claims and bar and permanently enjoin the Releasing Persons (and any Person acting or purporting to act on any such Releasing Person's behalf) from asserting, commencing, prosecuting, assisting, instigating, or in any way participating

in the commencement or prosecution of any action or other proceeding, in any forum, asserting any Released Claims, either directly, representatively, derivatively, or in any other capacity.

4.4.    The Judgment shall fully, completely, and forever discharge, settle, and release Plaintiffs and Plaintiffs' Counsel from all claims, including Unknown Claims, arising out of or relating to the institution, prosecution, settlement, or resolution of the Actions (provided, however, that the release, relinquishment, and discharge shall not include claims by the Parties hereto to enforce the terms of the Settlement or Agreement).

4.5.    Within five business days of entry of the Judgment, the Parties shall file a stipulation, in the form attached hereto as Exhibit F, dismissing the State Court Action with prejudice.

## 5.    TERMINATION RIGHTS AND EFFECT OF TERMINATION

Prior to the Effective Date, any Party may terminate and withdraw from this Agreement by providing written notice of their election to do so to the undersigned counsel for all other Parties within thirty (30) days after (a) the Court declines to approve this Agreement in any material respect; (b) the Court declines to enter the Scheduling Order in any material respect; (c) the Court declines to enter the Judgment granting final approval to this Agreement in any material respect; (d) the Judgment is modified or reversed in any material respect; or (e) the Actions are not dismissed with prejudice.  Neither a modification nor a reversal on appeal of the amount of fees, costs, or expenses awarded by the Court to Plaintiffs' Counsel shall be deemed a material modification or reversal of the Judgment or this Agreement.  If the Effective Date does not occur, or if this Agreement is disapproved, canceled or terminated in accordance with this Section 5, the Parties shall be restored to their respective litigation positions as of the date on which the

Agreement was executed, and except as otherwise expressly provided herein, the Parties shall proceed in all respects as if this Agreement had not been executed and any related orders had not been entered, and in that event all of their respective claims and defenses as to any issue in the Actions shall be preserved without prejudice in any way.

## 6.    DENIAL OF WRONGDOING OR LIABILITY

6.1.    This Agreement, whether or not approved by the Court, and any proceedings taken pursuant to this Agreement, any materials created by or received from another Party that were used in, obtained during, or related to settlement discussions, including, but not limited to, all negotiations, documents, and statements in connection therewith, shall not be offered or received against any of the Parties as evidence of or construed as or deemed to be evidence of (a) any liability, negligence, fault, or wrongdoing of any of the Parties, (b) a presumption, concession, or admission with respect to any liability, negligence, fault, or wrongdoing, or in any way referred to for any other reason as against any of the Parties, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement, (c) a presumption, concession, or admission by any of the Parties with respect to the truth of any fact alleged in the Actions or the validity of any of the claims or the deficiency of any defense that was or could have been asserted in the Actions or of any infirmity in the claims asserted, or (d) an admission or concession that the consideration to be given hereunder represents the consideration that could be or would have been recovered at trial.

6.2.    Nothing herein, however, shall prevent any of the Parties from using this Agreement, or any document or instrument delivered hereunder (a) to effect or obtain Court approval of this Settlement, (b) to enforce the terms of the Agreement, (c) for the purpose of

defending, on the grounds of *res judicata*, collateral estoppel, release, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim, any of the Released Claims, or (d) as otherwise required by law.

6.3.    Company and Defendants have denied, and continue to deny, each and all of the claims and contentions alleged in the Actions.  Company and Defendants have denied, and continue to deny, any and all allegations of wrongdoing, fault, liability, or damage and deny that they or any of the Company's other current or former officers or directors engaged in, committed, or aided or abetted the commission of any wrongdoing or violation of law or breach of duty, deny that the Company or any of its shareholders suffered any damage whatsoever, deny that they acted improperly in any way, believe that they acted properly at all times, and maintain that they diligently and scrupulously complied with their fiduciary and other legal duties.  Nonetheless, Company and Defendants wish to settle all disputes on the terms and conditions stated in this Agreement solely to eliminate the uncertainties, burden, and expense of further protracted litigation and to put the claims to be released hereby to rest finally and forever.

6.4.    Plaintiffs' entry into the Settlement is not an admission as to the lack of merit of any of the claims asserted in the Actions.  Plaintiffs and Plaintiffs' Counsel believe that the claims asserted in the Actions have merit.  Plaintiffs and Plaintiffs' Counsel, however, recognize and acknowledge the expense and length of proceedings necessary to prosecute the Actions against the Defendants through trial and, potentially, through appeals.  Plaintiffs and Plaintiffs' Counsel also have taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Actions, as well as the difficulties and delays

inherent in such litigation.  Plaintiffs and Plaintiffs' Counsel also are mindful of the inherent

problems of proof under and possible defenses to the claims asserted in the Actions.

**7.      RELEASE OF UNKNOWN CLAIMS**

The releases contemplated by this Agreement extend to claims that any of the Releasing

Persons do not know or suspect exist in his, her, or its favor at the time of the release of the

Released Claims, which if known might have affected the decision to enter into this Settlement

(the "Unknown Claims").  In granting the releases herein, the Parties acknowledge that they have

read and understand California Civil Code Section 1542, which reads as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO
> EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING
> THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST
> HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT
> WITH THE DEBTOR.

The Parties stipulate and agree that upon the Effective Date, Plaintiffs and each of the other

Releasing Persons shall be deemed to have, and by operation of the Judgment shall have, expressly

waived, relinquished and released all provisions, rights and benefits conferred by or under

California Civil Code Section 1542 or any law of the United States or any state of the United States

or territory of the United States, or principle of common law, which is similar, comparable or

equivalent to California Civil Code Section 1542.  The Parties acknowledge that the foregoing

waiver, relinquishment, and release and the inclusion of "Unknown Claims" in the definition of

"Released Claims" were separately bargained for and key elements of this Settlement and were

relied upon by each and all of the Defendants in entering into this Agreement.   Plaintiffs

acknowledge, and each of the other Releasing Persons by operation of law shall be deemed to have

acknowledged, that they may discover facts different from, or in addition to, those which they now

16

know or believe to be true with respect to the Released Claims, and in this event agree, or by

operation of law shall be deemed to have agreed, that the releases contained in this Agreement

shall be and remain effective in all respects and that it is the intention of the Releasing Persons to

completely, fully, finally, and forever extinguish any and all Released Claims, known or unknown,

suspected or unsuspected, which now exist, or heretofore existed, or may hereafter exist, and

without regard to the subsequent discovery of additional or different facts.   The release of

Unknown Claims also applies to Plaintiffs' Released Claims as defined in Section 2.3 herein.

**8.     CONDITIONS AND EFFECTIVE DATE**

8.1     The Effective Date of this Agreement shall be deemed to occur when each and

every one of the following conditions shall have occurred:

(a)     The Court has approved in all material respects the Notice of Pendency of

Derivative Action, Proposed Settlement of Derivative Action, and Settlement Hearing ("Notice")

attached as Exhibit C to this Agreement; the Summary Notice of Pendency of Derivative Action,

Proposed Settlement of Derivative Action, and Settlement Hearing ("Summary Notice") attached

as Exhibit D to this Agreement; the manner of providing of the Notice by Chipotle to its

shareholders of record and the manner of publication by Chipotle of the Summary Notice as

described in Section 9.1 below;

(b)     The Court has granted final approval of the Agreement and entered a Final

Order and Judgment, in all material respects identical to that attached as Exhibit E hereto; and

(c)     The times to appeal from the Final Order and Judgment have elapsed with

no appeal being filed, or, alternatively, if any appeal(s) are taken the underlying orders are affirmed

in their entirety in all material respects and are no longer subject to any further appeals or requests for rehearing.

8.2     The Parties agree, and agree to cause their respective counsel, to (i) use their best efforts to effectuate the terms and conditions of the Agreement in as expeditious a manner as possible; (ii) cooperate in preparing any and all necessary papers to pursue and effectuate the terms and conditions of the Agreement; and (iii) cooperate with one another in seeking the necessary approvals and orders to effectuate the conditions described in Section 3.

8.3     Should any of the foregoing conditions fail to occur, including if the Court should decline to grant a requested approval, or if any of the conditions set forth in Section 3 above have failed to occur by the date of the final Settlement Hearing, this Agreement shall terminate, and, with the exception of this Section 8, be null and void and of no force and effect for all purposes, and all negotiations, transactions, and proceedings connected with the Agreement shall be without prejudice to the rights of any party in the Actions, who shall be restored to their respective positions immediately prior to the execution of the Agreement.

**9.     NOTICE**

9.1     Notice of the terms set forth in this Agreement shall be provided to current record holders and beneficial owners of common stock of Chipotle pursuant to Order of the Court as follows:

(a)     Chipotle shall be responsible for mailing the Notice (Exhibit C) to the current record holders and beneficial owners of common stock of Chipotle by first-class U.S. Mail as of the date ordered by the Court as well as to provide any additional copies of the Notice as requested by any such holder;

18

(b)     Chipotle shall cause the newswire service Business Wire to issue the Summary Notice once to the public in the United States; and

(c)     Until after the Court approves the Final Order and Judgment (Exhibit E), Chipotle's website (www.chipotle.com) will provide access to the content of the Notice (Exhibit C). The homepage of the Chipotle website will contain a statement or heading identifying the Settlement, along with a hyperlink that brings users directly to a web page containing the content of the Notice.

9.2     Chipotle shall bear the cost of mailing the Notice as described in Section 9.1(a) above.  Chipotle shall also bear the cost of the Notice and Summary Notice set forth in Section 9.1(b) and (c) above.  None of the other Defendants shall be responsible for any costs associated with the notice of this Agreement.

**10.     ATTORNEYS' FEES AND EXPENSES, AND SERVICE AWARD**

10.1     Defendants agree that as a result of the Corporate Governance Reforms obtained by Plaintiffs' Counsel, Chipotle and its public shareholders received material and substantial benefits.  In light of benefits produced for Chipotle by Plaintiffs' attorneys in connection with this Agreement and the litigation leading up to it, Plaintiffs and Plaintiffs' Counsel intend to seek an aggregate award from the Court, to be paid solely by Chipotle, of $375,000 as compensation for attorneys' fees and expenses, subject to Court approval ("Fee and Expense Award").  Plaintiffs and Plaintiffs' Counsel agree not to request that any greater aggregate amount be awarded to Plaintiffs' Counsel by the Court, not to seek payment of attorneys' fees and expenses from any person or entity other than Chipotle, and that no other or greater payments or awards shall be requested from the Court.  The Parties agree that any Court order requiring payments or providing

awards of fees and expenses that is not consistent with the agreed limitations provided within the first two sentences of this Section 10.1 shall be deemed an unagreed material alteration of the terms of this Agreement and a failure to grant the approvals required by Section 3 hereof.  Chipotle and Defendants agree not to object to the agreed-upon amount of the $375,000 Fee and Expense Award. Further, Plaintiffs will be applying for a service award ("Service Award") of up to $1,000 for each Plaintiff to be paid from the Fee and Expense Award. Chipotle and Defendants agree to not object to the requested Service Award.

10.2    Within ten (10) calendar days of entry of the Judgment, Chipotle shall pay such fees and expenses as may be awarded by the Court to be deposited into the account designated by Plaintiffs' Counsel.  In the event that any such order is later reversed or modified (on appeal or otherwise), Plaintiffs' Counsel are jointly and severally obliged to refund to Chipotle the amount by which the fees and expenses were reduced and all interest accrued or accumulated thereon.

10.3    Failure of the Court to approve a request for attorneys' fees and expenses in whole or in part shall have no effect whatsoever on the Settlement set forth in this Agreement.  Final resolution of any such request for attorneys' fees and expenses and/or service award shall not be a condition to the dismissal of the Actions.

## 11.    MISCELLANEOUS

11.1    <u>Intent to Settle</u>.  The Parties and their respective counsel of record (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree to act in good faith and cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of,

and to obtain all necessary approvals of the Court required by, the Agreement (including, but not limited to, using their best efforts to resolve any objections raised to the Settlement).

11.2   <u>Warranty of Stock Ownership</u>.  Plaintiffs and their Co-lead Counsel represent and warrant that Plaintiffs are shareholders of Chipotle and were shareholders of Chipotle at all relevant times for the purposes of maintaining standing in the Actions.

11.3   <u>Enforcement</u>.  Prior to taking any action (including but not limited to commencing a lawsuit or serving a demand upon Chipotle's board of directors) to enforce this Agreement or the Corporate Governance Reforms, Plaintiffs, in both their personal and derivative capacity, agree to provide Defendants with written notice of any alleged violations of this Agreement or the Corporate Governance Reforms.  Defendants shall then have a period of sixty days in which to cure any such alleged violations, during which Plaintiffs shall not take any legal action against them.

11.4   <u>Notice.</u>   All notices, requests, demands, claims, and other communications hereunder shall be in writing by personal delivery or reputable overnight courier as set forth below:

<u>If to Plaintiffs, to</u>:

Stuart Guber
FARUQI & FARUQI, LLP
101 Greenwood Avenue
Suite 600
Jenkintown, PA  19046

<u>If to Defendants or Chipotle, to</u>:

Andrew B. Clubok
Nathaniel J. Kritzer
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022

Bryant S. "Corky" Messner
Douglas Wolanske
Thomas R. Blackburn
MESSNER REEVES LLP
1430 Wynkoop Street, Suite 300
Denver, Colorado 80202

Any Party hereto may change its address set forth above by giving notice to the other Parties in the manner set forth above.

11.5     Severability.   The failure by any particular Defendant or Chipotle to comply with any term of this Agreement or the Court Order approving this Agreement shall not give rise to a claim against any other Defendants or Parties who have complied.   Nor shall the failure by any Defendant or Chipotle to comply with any term of this Agreement or the Court Order approving this Agreement affect the releases of other Defendants or Parties who have complied.

11.6     Sophisticated Parties; No Construction Against Drafter.   Each Party hereto received independent legal advice from attorneys of his, her, or its choosing with respect to the advisability of entering this Agreement, the releases provided for in this Agreement, and with respect to the terms and conditions of this Agreement.   This Agreement has been negotiated by the Parties and counsel.   It is not to be construed against any party as the drafting party.   In the event that the Court or any other court is called upon to interpret this Agreement, no one party or group of parties shall be deemed to have drafted the Agreement.

11.7     Entire Agreement.   This Agreement in the form as finally approved by the Court embodies the entire agreement of the Parties.   There are no further or other promises, agreements, understandings, terms, conditions, or obligations other than those contained herein.   This

Agreement supersedes all previous communications, representations, or agreements, either verbal or written, between the Parties or their attorneys.

11.8    <u>No Rights of Subrogation.</u>  Plaintiffs represent and warrant that no person, entity, firm, corporation, or insurance company has received any rights of subrogation, or substitution to the claims made, or which could have been asserted by Plaintiffs in the Actions, and that there are no liens, voluntary, involuntary, statutory, or otherwise, relating to Plaintiffs' claims in the Actions, or this Agreement.  Defendants and Chipotle represent and warrant that no person, entity, firm, corporation, or insurance company has received any rights of subrogation, or substitution to the claims, if any, which could have been asserted by Defendants and/or Chipotle in the Actions, and that there are no liens, voluntary, involuntary, statutory, or otherwise relating to such claims or this Agreement.

11.9    <u>No Transfer or Assignment of Claims.</u>  Plaintiffs represent and warrant that they have not assigned, transferred, or conveyed, nor purported to assign, transfer, or convey, to any person, entity, firm, corporation, or insurance company, any rights, claims, or causes of action (or any portion thereof) they may have, or have had, against any or all of the Defendants, with respect to Plaintiffs' Claim in the Actions or any matters described in the Actions.  The Defendants and Chipotle represent and warrant they have not assigned, transferred, or conveyed, nor purported to assign, transfer, or convey, to any person, entity, firm, corporation, or insurance company, any rights, claims, or causes of action (or any portion thereof) they may have, or have had, against the Plaintiffs, with respect to the claims, if any, which could have been asserted by Defendants and/or Chipotle in the Actions.

11.10   <u>Further Cooperation.</u>   The Parties agree to cooperate fully and execute any and all supplementary documents that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement.

11.11   <u>Authority to Execute; Counterparts.</u>   The individuals executing this Agreement on behalf of the Parties represent and warrant that they have the authority to act on behalf of their principal and execute this document on their principal's behalf.   This Agreement may be executed in counterparts, each of which shall be deemed an original, and when taken together with the other signed counterparts, shall constitute one and the same instrument.   Facsimile or .pdf signatures shall constitute valid evidence of execution.   This Agreement shall be deemed to be executed as of the date that all counsel for the Parties have executed a counterpart, even though no single counterpart is executed by all counsel for the Parties.

11.12   <u>Limited Right to Appeal.</u>   The Parties covenant and agree not to appeal the Final Order and Judgment.   Nothing in this paragraph should be construed to grant or confer any right of appeal to any party or nonparty to the Actions, other than as already exists and as provided by applicable law, if any.

11.13   <u>Stay of Proceedings.</u>   Pending Court approval of the Agreement, the Parties agree to stay any and all proceedings in the Actions other than those incident to the Agreement itself. The Parties shall agree to extensions of time with respect to pleadings and other Court deadlines and filings as are appropriate in the context of this Agreement.   Without further order of the Court, the Parties may agree to reasonable extensions of time not expressly set by the Court in order to carry out any of the provisions of this Agreement.

11.14   <u>Third-Party Beneficiaries.</u>   No third parties are intended beneficiaries of this Agreement and the promises contained therein, with the exception of those non-Parties who are among the Released Parties to whom the Releases contained in Section 2 extend.

11.15   <u>Exhibits.</u>   The Exhibits to this Agreement are a material and integral part hereof and are fully incorporated herein by this reference.

11.16   <u>Amendments; Waiver.</u>   This Agreement may be amended or any of its provisions waived only by a written instrument executed by all Parties or by attorneys authorized to act on their behalf.   Any failure by any Party to insist upon the strict performance by any other Party of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of this Agreement to be performed by such other Party.   Waiver by any Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement, and failure by any Party to assert any claim for breach of this Agreement shall not be deemed to be a waiver as to that or any other breach and will not preclude any Party from seeking to remedy a breach and enforce the terms of this Agreement.

11.17   <u>Governing Law.</u>   This Agreement shall be governed by the laws of Delaware, without regard to conflict of laws principles.

11.18   <u>Headings.</u>   The section headings used throughout this Agreement are for convenience only and shall not affect the construction or interpretation of the Agreement.

11.19   <u>Disparaging Remarks.</u>   None of the Parties, nor any of the Parties' respective attorneys or representatives, shall issue any press release or make any other public statement describing this Agreement which disparages any Party or accuses any Party of any wrongdoing.

11.20   <u>Jurisdiction.</u>   The Court shall retain jurisdiction over the implementation and enforcement of this Agreement.

**<u>AGREED TO AND EXECUTED BY:</u>**

**BERENS LAW LLC**                                     **MESSNER REEVES LLP**


_____          _____

Jeffrey A. Berens
2373 Central Park Boulevard, Suite 100
Denver, CO  80238
Tel:  (303) 861-1764
jeff@jberenslaw.com

Date: September 29, 2017

Douglas C. Wolanske

Kendra N. Beckwith
Thomas R. Blackburn
1430 Wynkoop Street, Suite 300
Denver, CO 80202
Tel: (303) 623-1800
dwolanske@messner.com
kbeckwith@messner.com
tblackburn@messner.com

Date: September 29, 2017


**FARUQI & FARUQI, LLP**                          **KIRKLAND & ELLIS LLP**


_____          _____

Stuart J. Guber
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Tel:  (215) 277-5770
sguber@faruqilaw.com

Date: September 29, 2017

Andrew B. Clubok
Nathaniel J. Kritzer
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
andrew.clubok@kirkland.com
nathaniel.kritzer@kirkland.com

Date: September 29, 2017

*Counsel for Defendants*

**ANDREWS & SPRINGER LLC**

_____

Peter B. Andrews
Craig J. Springer
3801 Kennett Pike
Building C, Suite 305
Wilmington, DE 19807
Tel: (302) 504-4957
pandrews@andrewsspringer.com
cspringer@andrewsspringer.com

Date: September 29, 2017

**THE BROWN LAW FIRM, P.C.**

_____

Timothy W. Brown
240 Townsend Square
Oyster Bay, NY 11771
Tel:  (516) 922-5427
tbrown@thebrownlawfirm.net

Date: September 29, 2017

**CODY-HOPKINS LAW FIRM**

_____

Karen Cody-Hopkins
4610 S. Ulster St #150
Denver, CO 80237
Tel:  (303) 221-4666
karen@codyhopkinslaw.com

Date: September 29, 2017

**LABATON SUCHAROW LLP**

_____

Ned Weinberger
Thomas Curry
300 Delaware Ave., Suite 1340
Wilmington, DE 19801
Tel: (302) 573-2540
NWeinberger@labaton.com
TCurry@labaton.com

Date: September 29, 2017

**RIGRODSKY & LONG, P.A.**

_____

Seth D. Rigrodsky
Brian D. Long
Marc A. Rigrodsky
2 Righter Parkway, Suite 120
Wilmington, Delaware  19803
Tel:  (302) 295-5310
MAR@rl-legal.com

Date: September 29, 2017

**THE ROSEN LAW FIRM, P.A.**

_____

Phillip Kim
275 Madison Avenue, 34th Floor
New York, NY 10016
Tel:  (212) 686-1060
pkim@rosenlegal.com

Date: September 29, 2017

**THE SHUMAN LAW FIRM**
Rusty E. Glenn
Kip B. Shuman
600 17th Street, Suite 2800
South Denver, CO 80202

Tel:  (303) 861-3003
rusty@shumanlawfirm.com

*Counsel for Plaintiffs*

11.19   <u>Disparaging Remarks.</u>   None of the Parties, nor any of the Parties' respective attorneys or representatives, shall issue any press release or make any other public statement describing this Agreement which disparages any Party or accuses any Party of any wrongdoing.

11.20   <u>Jurisdiction.</u>   The Court shall retain jurisdiction over the implementation and enforcement of this Agreement.

**AGREED TO AND EXECUTED BY:**

**BERENS LAW LLC**

Jeffrey A. Berens
2373 Central Park Boulevard, Suite 100
Denver, CO 80238
Tel: (303) 861-1764
jeff@jberenslaw.com

Date: September 29, 2017

**MESSNER REEVES LLP**

Douglas C. Wolanske
Kendra N. Beckwith
Thomas R. Blackburn
1430 Wynkoop Street, Suite 300
Denver, CO 80202
Tel: (303) 623-1800
dwolanske@messner.com
kbeckwith@messner.com
tblackburn@messner.com

Date: September 29, 2017

**FARUQI & FARUQI, LLP**

Stuart J. Guber
101 Greenwood Avenue, Suite 600
Jenkintown, PA 19046
Tel: (215) 277-5770
sguber@faruqilaw.com

Date: September 29, 2017

**KIRKLAND & ELLIS LLP**

Andrew B. Clubok
Nathaniel J. Kritzer
601 Lexington Avenue
New York, NY 10022
Tel: (212) 446-4800
andrew.clubok@kirkland.com
nathaniel.kritzer@kirkland.com

Date: September 29, 2017

*Counsel for Defendants*

26

**ANDREWS & SPRINGER LLC**

*Peter B. Andrews by AB*

Peter B. Andrews
Craig J. Springer
3801 Kennett Pike
Building C, Suite 305
Wilmington, DE 19807
Tel: (302) 504-4957
pandrews@andrewsspringer.com
cspringer@andrewsspringer.com

Date: September 29, 2017

**THE BROWN LAW FIRM, P.C.**

*Timothy W. Brown by AB*

Timothy W. Brown
240 Townsend Square
Oyster Bay, NY 11771
Tel: (516) 922-5427
tbrown@thebrownlawfirm.net

Date: September 29, 2017

**CODY-HOPKINS LAW FIRM**

*Karen Cody-Hopkins by AB*

Karen Cody-Hopkins
4610 S. Ulster St #150
Denver, CO 80237
Tel: (303) 221-4666
karen@codyhopkinslaw.com

Date: September 29, 2017

27

**LABATON SUCHAROW LLP**

Ned Weinberger by NB

Ned Weinberger
Thomas Curry
300 Delaware Ave., Suite 1340
Wilmington, DE 19801
Tel: (302) 573-2540
NWeinberger@labaton.com
TCurry@labaton.com

Date: September 29, 2017

**RIGRODSKY & LONG, P.A.**

Seth D Rigrodsky by NB

Seth D. Rigrodsky
Brian D. Long
Marc A. Rigrodsky
2 Righter Parkway, Suite 120
Wilmington, Delaware  19803
Tel:  (302) 295-5310
MAR@rl-legal.com

Date: September 29, 2017

**THE ROSEN LAW FIRM, P.A.**

Phillip Kim by NB

Phillip Kim
275 Madison Avenue, 34th Floor
New York, NY 10016
Tel:  (212) 686-1060
pkim@rosenlegal.com

Date: September 29, 2017

**THE SHUMAN LAW FIRM**
Rusty E. Glenn
Kip B. Shuman
600 17th Street, Suite 2800
South Denver, CO 80202

Tel:  (303) 861-3003
rusty@shumanlawfirm.com

*Counsel for Plaintiffs*